PRESIDENT, DIRECTORS AND COMPANY OF THE FANEUIL HALL BANK *vs.* PRESIDENT, DIRECTORS AND COMPANY OF THE BANK OF BRIGHTON.

A draft made by a bank within upon a bank without the Commonwealth for more than the sum of one hundred dollars, contrary to the Rev. Sts. *c.* 36, §§ 57, 62, is not void; but an innocent holder, after due demand upon the drawees and the bank, may recover the amount thereof, with interest at the rate of two per cent. a month, under §§ 60-63.

A bank is responsible for the acts of its cashier, in making a draft upon another bank for the payment of money at a future day certain, contrary to the Rev. Sts. *c.* 36, § 57, although fraudulently drawn by him, for the purpose of concealing his embezzlement of the funds of the bank.

ACTION OF CONTRACT upon two drafts, for $10,000 each, drawn by Robert N. Woodworth, cashier of the Bank of Brighton, upon the Fulton Bank of New York, the first dated August 25th 1858, payable " on the 28th day of September, graceless," to the order of J. P. Squire & Co., and by them indorsed, and the second dated September 7th 1858, payable to the plaintiffs on the 7th of October; with a third count, for the sum of $20,000 had and received to the plaintiffs' use. The parties submitted the case to the court upon the following statement of facts :

" The two drafts declared upon were made by Woodworth,

cashier of the defendant bank, and were duly presented for payment at the Fulton Bank, and protested for nonpayment. They were duly demanded at the Bank of Brighton, on the days alleged in the plaintiffs' declaration, and payment refused. The first draft was passed to J. P. Squire & Co., who indorsed the same to the plaintiffs, and the plaintiffs discounted it for its full value, which was paid to Squire & Co., on the faith of the paper. The second draft was sold by Woodworth to the plaintiffs, who discounted it in like manner. Woodworth had for some years carried on a system of drawing and discounting with different persons similar drafts on time on the Fulton Bank, for the purpose of concealing embezzlements, commenced four or five years previously.

" When Woodworth gave Squire & Co. the first draft declared on, they got it discounted at the Faneuil Hall Bank, paying the discount of $ 50; and the amount, $ 10,000, was passed to their credit. Squire & Co., on the same day, gave Woodworth two checks on the Fanueil Hall Bank, one for $ 6000 and the other for $ 4000, and Woodworth paid them the discount of $ 50, in cash. Woodworth then sent Squire & Co.'s clerk with the $ 6000 check to the Faneuil Hall Bank, who received the bills therefor, and handed them to Woodworth, who forthwith deposited them in the Suffolk Bank, (with which the Bank of Brighton kept an account in the usual manner,) to the credit of the Bank of Brighton, to help make good the Bank of Brighton's account at the Suffolk Bank. This account at the Suffolk Bank had been drawn down by Woodworth in continuing his plan, by which he concealed his embezzlements of the funds of the Bank of Brighton, which embezzlement, to the extent of about $ 44,500, had existed for nearly two years previous.

" In the course of the business of the Bank of Brighton, it was the custom of the teller to deliver at times Bank of Brighton bills to the cashier, for the purpose of being used by the cashier in the business of the bank, and to receive as a voucher therefor the cashier's memorandum check. These checks were afterwards taken up by the cashier's delivering therefor to the teller

bills, or other funds, which were considered cash. The $ 4000, above mentioned, were made use of by him to make good in part a check thus given to the teller.

" The proceeds of the second draft were received by Woodworth in the bills of the Faneuil Hall Bank, of which $ 9000 were deposited on the same day to the credit of the Bank of Brighton at the Suffolk Bank, for the same purpose as stated with regard to the $ 6000 on the first draft. A part of the remaining $ 1000 was turned into the Bank of Brighton in the same manner as the $ 4000, before mentioned, and the balance was unaccounted for.

" The plaintiffs had no knowledge of any of the frauds of Woodworth, or of anything irregular in the paper, (unless such irregularity appears on its face,) and took these two drafts in the regular course of their banking business.

" These two drafts were not made with the actual knowledge of any of the defendants' officers, excepting Woodworth; but the defendant bank had before, with the knowledge of its directors, in their regular business, made and allowed in their settlement with the Fulton Bank similar drafts, some of which had been discounted at the Faneuil Hall Bank, and paid at maturity at the Fulton Bank; and the defence that Woodworth had no authority to make and have discounted such drafts is waived — if the directors or other officers could by acquiescence, or in any other manner, without direct vote of the board of directors, give such authority.

" The defendants rely upon the defence that the drafts were illegal under the statutes of this commonwealth, and that no officer of the bank could lawfully make them, and that they are therefore void.

" If, upon the foregoing facts, or such thereof as are admissible in evidence, the drafts are not void in the hands of the plaintiffs; or the officers and directors of the bank could authorize, without a direct vote of the board of directors, the issuing thereof, judgment shall be rendered for the amount of both, or either, as the court shall determine, with such interest thereon as the law allows; if the court shall think that the

plaintiffs are not entitled to recover upon the counts upon the drafts, or either of them, but are entitled to recover upon the money count, judgment is to be rendered thereon for such amount and interest as the court shall order; otherwise, for the defendants."

*B. R. Curtis & C. A. Welch*, for the plaintiffs, cited Rev. Sts. c. 36, §§ 57, 61 – 63; Story on Bills, § 13; *Worcester County Bank* v. *Dorchester & Milton Bank*, 10 Cush. 488; *White* v. *Franklin Bank*, 22 Pick. 184, 186, 188; *Manufacturers & Mechanics' Bank* v. *Gore*, 15 Mass. 80; *Mason* v. *Waite*, 17 Mass. 563; *Atlantic Bank* v. *Merchants' Bank*, 10 Gray, 532; *Glyn* v. *Baker*, 13 East, 509; *Oneida Bank* v. *Ontario Bank*, 21 N. Y. 490.

*B. F. Thomas & H. F. Durant*, for the defendants, cited also *Sts.* 1809, c. 38, § 1; 1816, c. 91, §§ 1, 2; 1828, c. 96, § 25; c. 97, § 2; 1834, c. 203, §§ 1, 2; *Holman* v. *Johnson*, Cowp. 343; *Mills* v. *Western Bank*, 10 Cush. 22; *Western Bank* v. *Mills*, 7 Cush. 539; *Mills* v. *Rice*, 6 Gray, 458; *Cone* v. *Baldwin*, 12 Pick. 545; *Thompson* v. *Hale*, 6 Pick. 262; *Knapp* v. *Lee*, 3 Pick. 452; *Merriam* v. *Granite Bank*, 8 Gray, 254; *Gill* v. *Cubitt*, 3 B. & C. 466.

CHAPMAN, J. The plaintiffs seek to recover of the defendants the amount of the two drafts declared upon; the plaintiffs being indorsees for value, the defendants by their cashier being the drawers, and the drafts having been protested for nonpayment. The defendants say that the drafts, being payable on time, were drawn by their cashier in violation of the Rev. Sts. c. 36, § 57, and are therefore void, and that even a holder for value cannot enforce their payment. This section is in the following words: "No bank shall make or issue any note, bill, check, draft, acceptance, certificate, or contract, in any form whatever, for the payment of money, at any future day certain, or with interest, excepting for money that may be borrowed of the Commonwealth, or of any institution for savings incorporated under the authority of the Commonwealth, and excepting also, that all debts due to any bank from any other bank, including bills of the bank so indebted, may lawfully draw interest." This section does not attach any penalty to the offence; and if

the defendants' position is correct, that it is to be construed by itself, all the penal consequences of its violation by a bank will fall upon the holders of such notes, bills, checks, drafts, acceptances, &c., as the bank may choose to issue, payable at a future day certain, or with interest; because such notes, &c., are void and cannot be collected, even in the hands of holders for value; while the bank may keep the money it has obtained for its worthless paper, and be free from any penalty. Upon such a construction of the act, any bank might issue as many bills as it could procure to be put into circulation, payable at a future day certain, or with interest, and be exempt not only from paying them, but exempt from any punishment for issuing them. It might be subject to a forfeiture of its charter; but it could well afford this, after one large speculation of such a character. It would require a very plain and unequivocal expression of legislative intent to bring us to such a result. We are therefore induced to look further into this chapter; to see whether some of the subsequent sections have not some connection with this. We discern some reason for this course in the fact that in the legislation that existed on this subject when the Revised Statutes were passed, and also in the report of the commissioners, the substance of this and several subsequent sections were contained in a single long section. The legislature adopted the policy of separating the provision of one long section into several short ones, and they also made some changes in the existing law, showing that they revised the whole system.

Proceeding then to section 58, we find a restriction on bank loans, and in the same section a penalty on the bank of five hundred dollars for violating the restriction. But in section 59, the taking of a greater rate of interest than six per cent. is forbidden, yet the section contains no penalty for the offence. The penalty is contained in section 60. We perceive therefore that the legislature did not adopt any uniform rule as to the insertion of the penalty in the same section that declared the offence.

We then come to section 61, which is as follows: " Every

bank, which shall issue any bill, note, check, or draft, redeemable in any other manner than by payment in specie on demand, or payable at any place other than the place where such bank is by law established and kept, shall be liable to pay the same in specie to the holder thereof on demand at said bank, without a previous demand at the place where the same is, on the face of such bill, note, check, or draft, made payable; and if the bank which issued the same shall neglect or refuse so to pay on demand, such bank shall be liable to pay to the holder thereof two per cent. a month damages, as before provided in this chapter." But to "issue any bill, note, check, or draft, redeemable in any other manner than by payment in specie on demand," is to violate section 57. This section, then, relates to an offence declared by that. And the penalty is not a pecuniary fine; the nature of the offence enables the legislature to check it in a much better way than by fine. It gives a legislative construction to the bill, note, check, or draft, illegally issued, by which, instead of being void in the hands of a holder for value, it is payable on demand in specie at the bank, and if not so paid, subjects the bank to two per cent. a month damages. Instead of punishing the holder by making the paper void in his hands, and enabling the bank to keep the money it has wrongfully obtained, it makes the offence itself impossible, and destroys all motive to attempt its commission. It is the most effective of all legislation, in cases where it can be applied, and makes a fine or forfeiture unnecessary. It places such paper on the same ground on which bank bills are placed by section 29. And as between a bank and parties who may come into possession of its negotiable paper for value, it is manifestly just.

Section 62 relates to the same subject, and its exclusive object is to modify and limit section 61. It provides that section 61 shall not extend to any check or draft drawn by the president or cashier of any bank within this state, on any other bank, within or without the State, for any sum exceeding one hundred dollars; but these two classes of paper, namely, checks and drafts for more than one hundred dollars, drawn by one bank upon another, and redeemable in some other manner than

by payment in specie on demand, shall first be presented at the bank on which the same are drawn. Then follows a provision obviously intended to operate as a restraint upon making such checks or drafts without providing for their payment; namely, that the holder may recover the amount with two per cent. a month damages from the bank that issued the paper, if the bank after the protest neglects to pay it on demand.

Now the drafts in suit were drawn upon another bank, the Fulton Bank of New York, and were for more than one hundred dollars. It was necessary, therefore, to present them at the Fulton Bank, and, as they were not paid there, the 62d section expressly makes the defendants liable to pay them with two per cent. a month damages from the time when the defendants, after the protest, refused to pay the same on presentment at their banking-house.

The construction thus given to the 61st and 62d sections operates as an important modification of section 57. It will be seen that sections 61 and 62 do not touch the subject of notes, &c., payable with interest — which is one of the classes mentioned in section 57 — and the whole legislation on this subject lacks clearness and accuracy. But the drafts in suit are not made payable with interest, and thus they come within the provisions of all the three sections.

It is impossible thus to give this matter proper consideration, without adverting to section 63, which is as follows: " Nothing contained in this chapter shall restrain any bank from drawing any check or draft for any balance due to said bank."

Therefore section 57 does not restrain the defendants from drawing drafts upon the Fulton Bank for any balance that may be due them. But a holder of a draft for value is not bound to know that the draft is not for a balance due, and payable at the time when the draft is made payable. If section 57 was designed to prohibit the making of such drafts on time, it does not clearly express the prohibition; for one of its exceptions is that all debts due to any bank from any other bank, including bills of the bank so indebted, may lawfully draw interest. But if such indebtedness with interest may exist, it

must exist by virtue of a contract, express or implied; and if a contract is authorized, it must be incident to it, that it may fix the time for which the debt shall exist on interest, and when it shall become payable.   This analysis of the statute may leave its provisions less stringent than they have been commonly supposed to be, and some amendment may be necessary.   But the inference from the view above taken is this: that if the defendants would have a right under sections 57 and 63, to make such drafts as those in suit for a balance due them, and if a holder for value has a right, as against the defendants, to regard the drafts as drawn for balance, then the defence must fail.   There can be no doubt that the plaintiffs as indorsees had a right to regard the drafts as drawn against funds in the Fulton Bank sufficient to meet them; and that they had a right to make every presumption which the law made possible in favor of the legality of the drafts.   And as the 57th section does not prohibit one bank from owing another bank a debt payable on time with interest, and as a draft for the amount of such a debt may be made before it is payable, the draft in such a case is permitted by the statute to be drawn payable at a future day certain for the amount of such debt. And if the defendants were guilty of an offence in making a draft, when no balance was due, the plaintiffs are not parties to it, nor implicated in it.

The views which the court have taken of the statute are not free from difficulty; for the statute is in some degree obscure, partly because the phraseology relating to the same matters differs in different sections, and partly because the legislature do not appear to have had in view, in prescribing penalties, all the various cases that would arise under the prohibitions of the statute.

There can be no doubt that the defendants are responsible for the act of their cashier, it being within the scope of his authority to make their drafts, and if he defrauded them, they must bear the loss.

Judgment must be rendered for the plaintiffs, with interest at the rate of two per cent. a month from the time when the drafts

were presented to the defendants for payment after the protest, the defendants having had no funds in the Fulton Bank. The entry of judgment will be as of December 3d 1860, since which time the case has been delayed by the court for consideration. Beyond that time the penalty ought not to run.

*Judgment for the plaintiffs accordingly.*